Neffertiti ROBINSON, individually and on behalf of those similarly situated, Plaintiff–Appellee

v.

J & K ADMINISTRATIVE MANAGEMENT SERVICES, INCORPORATED; Kimberly M. Meyers, Defendants–Appellants

v.

Sandra Harris; Gloria Turner; Joan Stanton; Ann Knight, Third Party Defendants–Appellees.

No. 15–10360.

United States Court of Appeals, Fifth Circuit.

March 17, 2016.

Christopher Richard Miltenberger, Hunton & Williams, L.L.P., Dallas, TX, for Plaintiff–Appellee and Third Party Defendants–Appellees.

David J. Goodman, Eric Joseph Millner, Bourland, Wall & Wenzel, P.C., Fort Worth, TX, for Defendant–Appellant.

Before CLEMENT, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Appellants J & K Administrative Management Services, Inc. and Kimberly N. Meyers appeal the district court's order to compel collective arbitration of Neffertiti Robinson's complaint for unpaid overtime wages. Because the district court correctly applied *Pedcor Management Co. Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir.2003), to compel arbitration, we **AFFIRM**.

## FACTUAL AND PROCEDURAL HISTORY

J & K Administrative Management Services, Inc. entered into an arbitration agreement with each of its employees. The agreement required arbitration of "claims for wages or other compensation," "claims for a violation of any other federal, state or governmental law, statu[t]e, regulation or ordinance," and "claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim."

On January 23, 2014, Neffertiti Robinson, a former employee of J & K, sent a letter and arbitration complaint to J & K's counsel detailing claims for unpaid overtime wages under the Fair Labor Standards Act. After J & K failed to respond, Robinson filed a complaint for arbitration on behalf of herself and other similarly situated employees with JAMS, a private alternative dispute resolution coordinator. JAMS sent a notice of intention to initiate arbitration to J & K, which the company

also disregarded. Four other former J & K employees, Sandra Harris, Gloria Turner, Joan Stanton, and Ann Knight, later filed notices of consent to join the collective arbitration.

Upon J. & K's failure to respond to the notice of initiation of arbitration, Robinson filed a complaint and motion to compel arbitration of her claims, appoint JAMS as the arbitrator, and allow the arbitrator to determine whether collective arbitration was permitted by the agreement. The district court held, according to *Pedcor Management*, that the question of whether class arbitration is permissible should be decided by the arbitrator, and the agreement confirms that such questions should be deferred to arbitration. It also noted that it did not have to decide whether the agreement authorized collective arbitration, because the arbitrator can and should answer that question. Therefore, the district court ordered the parties to arbitrate the claims under the agreement and dismissed the action with prejudice. J & K now appeals.

## DISCUSSION

■■■ An order to compel arbitration is reviewed de novo. *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558 (5th Cir. 2011). The court "perform[s] a two-step inquiry to determine whether to compel a party to arbitrate: first whether parties agreed to arbitrate and, second, whether federal statute or policy renders the claims nonarbitrable." *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir.2009). We "divide the first step into two more questions: whether a valid agreement to arbitrate exists and whether the dispute falls within the agreement." *Id.*

### I.

Before turning to the merits of this appeal, it is necessary to examine the parties' competing interpretations of the relevant law. We therefore begin with J & K's contention that *Pedcor Management* has since been abrogated and should not be applied to Robinson's action to compel arbitration.

### A.

■■■ Preliminary issues in arbitration cases include gateway disputes, which typically require judicial determination, and procedural questions, which are to be reviewed by the arbitrator. *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 451–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion). The arbitrability of disputes—in other words, the determination of whether the agreement applies to the parties' claims—is generally a gateway issue to be determined by the courts. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This issue, however, is deferred to arbitration where the agreement espouses the parties intent to do so. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("[T]he 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'") (internal citations omitted); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.") (internal citation omitted); *Gen. Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 247 (5th Cir.1998).

The same is true for the threshold question of whether class or collective arbitra-

tion is available under an arbitration agreement. In *Green Tree Financial Corp. v. Bazzle,* 539 U.S. at 444, 123 S.Ct. 2402, the Supreme Court reviewed a decision of the South Carolina Supreme Court holding that, as a matter of South Carolina law, courts must interpret silence as to class procedures as agreement to submit to them. The Supreme Court reversed, concluding in a plurality opinion that since the arbitration agreement in *Green Tree* included "sweeping language concerning the scope of the questions committed to arbitration," the availability of class arbitration should have been submitted to the arbitrator and not adjudicated by the court. *Id.* at 453, 123 S.Ct. 2402.

■ We later adopted *Green Tree's* reasoning. *See Pedcor Mgmt.,* 343 F.3d at 355. In *Pedcor Management,* a party to an arbitration agreement challenged an order compelling class arbitration. After reviewing *Green Tree,* we determined that the plurality opinion, along with a concurring opinion by Justice Stevens, constituted a majority that required the application of *Green Tree* by this court. *Id.* at 363. But *Pedcor Management* did not, as Robinson argues, stand for the proposition that the availability of class determination must always be decided by the arbitrator. Rather, it held that when an agreement includes broad coverage language, such as a contract clause submitting "*all* disputes, claims, or controversies arising from or relating to" the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by

the arbitrator. *Id.* at 359 (emphasis in original).

## B.

J & K contends in two related arguments that *Stolt–Nielsen S.A. v. Animal-Feeds International, Corp.,* 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), abrogated *Pedcor Management.* First, J & K argues that *Stolt–Nielsen's* statement that there was no majority opinion in *Green Tree* forbids us from applying *Pedcor Management.* Second, J & K asserts that *Stolt–Nielsen* enunciated a national policy against class arbitration that precludes arbitrators from determining the availability of class or collective procedures. We disagree.

In *Stolt–Nielsen* the Supreme Court clarified that *Green Tree* "did not yield a majority decision on any of the three questions," including the question of "which decision maker (court or arbitrator) should decide whether the contracts in question were 'silent' on the issue of class arbitration." *Id.* at 678–79, 130 S.Ct. 1758. Thus, our conclusion in *Pedcor Management,* that the *Green Tree* plurality coupled with Justice Stevens's concurrence answered the question, was not accurate.[1] But, *Stolt–Nielsen* also refused to speak to this issue. *Id.* at 680, 130 S.Ct. 1758 ("In fact, however, only the plurality decided that question. But we need not revisit that question here."). *Stolt–Nielsen's* refusal to decide this issue is not sufficient to set aside *Pedcor Management.*

---

1. *Another panel of this court recognized this issue but resolved the case without revisiting Pedcor Management. See Reed v. Fla. Metro. Univ., Inc.,* 681 F.3d 630, 634 n. 3 (5th Cir. 2012) *abrogated by Oxford Health Plans LLC v. Sutter,* —— U.S. ——, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013) ("In *Pedcor* ... a panel of this court held that the class arbitration deci-

sion should be made by an arbitrator rather than a court. The *Pedcor* panel premised its decision upon *Green Tree....* The Supreme Court in *Stolt–Nielsen,* however, emphasized that, on this point, *Green Tree* was only a plurality decision." (internal quotation marks and citations omitted)).

J & K's second contention is equally unavailing. In *Stolt–Nielsen,* the Supreme Court reviewed a petition to vacate an arbitration award that questioned whether a party could be compelled to enter into class arbitration when the agreement is silent on such procedures. The court determined that *Green Tree's* plurality opinion was not applicable to that dispute because *Green Tree* only answered the question of who decides whether class arbitration is available, not the standard for determining when it is in fact permissible. *Id.* at 679, 130 S.Ct. 1758. As a result, the Supreme Court held that while it is clear "that parties may specify *with whom* they choose to arbitrate their disputes," *id.* at 683, 130 S.Ct. 1758, "a party may not be compelled [by an arbitrator or court] to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so," *id.* at 684, 130 S.Ct. 1758.

*Stolt–Nielsen* does not overrule prior Supreme Court and Fifth Circuit decisions requiring questions of arbitrability, including the availability of class mechanisms, to be deferred to arbitration by agreement. Therefore, we continue to be bound by *Pedcor Management* under the rule of orderliness. *See, e.g., Jacobs v. Nat'l Drug Intelligence Ctr.,* 548 F.3d 375, 378 (5th Cir.2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court. Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void.").

■ J & K nevertheless argues, citing *Hoskins v. Bekins Van Lines,* 343 F.3d 769, 776 (5th Cir.2003), that the "rule of orderliness is inapplicable where an inter-vening decision of the Supreme Court or of the en banc Court of Appeals casts doubt on the prior ruling or the analysis employed to arrive at the ruling." In *Hoskins,* this court revisited its precedent because an intervening Supreme Court decision fundamentally changed the focus of the analysis for removal of a federal cause of action. But here, *Stolt–Nielsen* does not fundamentally alter the focus of the analysis of when to submit questions of class or collective arbitrability to arbitration; instead it acknowledges that the Supreme Court has never answered that question. Therefore, the rule of orderliness mandates that *Pedcor Management* is controlling, and we are bound to apply it and its clear rule of law: if parties agree to submit the issue of arbitrability to the arbitrator, then the availability of class or collective arbitration is a question for the arbitrator instead of the court.

Having disposed of these preliminary arguments, we now review the district court's application of *Pedcor Management* to the facts of this case.

II.

Section (g) of the arbitration agreement subjects "claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim" to arbitration. J & K contends that section (g) does not allow deferral because it is silent as to class arbitration. J & K further contends that the panel may not read section (g) as deferring the arbitrability question because the agreement applies only between the company and Robinson and may not be read to include arbitration of Harris, Turner, Stanton, and Knight's non-party claims. These arguments, however, are a misguided attempt to bootstrap a preliminary proceeding into judicial review of an arbitration award that does not

yet exist. J & K may be right that the agreement does not allow class or collective arbitration, but that is not the issue before the court. The issue is who decides if the arbitration agreement permits class or collective procedures.

Contract language similar to section (g) has been found to authorize deferral of arbitrability issues. In *Green Tree*, the plurality held that language submitting "[a]ll disputes, claims or controversies arising from or relating to this contract" to arbitration, 539 U.S. at 448, 123 S.Ct. 2402, was sufficient for deferral, *id.* at 453, 123 S.Ct. 2402. Similarly, in *Pedcor Management,* this court concluded that a clause submitting "any dispute ... in connection with the [a]greement" included determinations of class or collective arbitration. 343 F.3d at 359 (internal quotations omitted). And, in *Rent–A–Center, West, Inc. v. Jackson,* an agreement granting exclusive authority to an arbitrator "to resolve any dispute relating to the interpretation, applicability, enforceability or formation of [the] [a]greement," 561 U.S. 63, 66, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010), was determined to be an unambiguous and proper delegation of authority under the Federal Arbitration Act, *id.* at 75–76, 130 S.Ct. 2772..

■ Section (g) is materially similar to this contract language. It requires that "claims challenging the validity or enforceability of" the agreement must be arbitrated. Therefore, we conclude that section (g) is unambiguous evidence of the parties intention to submit arbitrability disputes to arbitration and that arbitration was properly compelled.

### III.

J & K also asks that we appoint an independent arbitrator to hear Robinson's claims. The district court, however, already appointed JAMS as the arbitral forum when it granted Robinson's motion to compel, which included a request to "appoint JAMS as the arbitrator." Since neither party argues that the district court erred in appointing JAMS as the arbitral forum, any challenges to the appointment have been waived on appeal. Arbitration of Robinson's claims, including whether class procedures are permissible, should proceed as ordered with JAMS as the arbitral forum.

### CONCLUSION

The judgment of the district court is **AFFIRMED.**