TERRY R. MEANS, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction (doc. 67). The motion requires this Court to decide whether this Court or an arbitrator should determine whether the underlying arbitration must proceed as a class arbitration or remain as eighteen individual arbitrations. After review of the arbitration agreement at issue, the parties' briefs, and relevant case law, the Court GRANTS the motion based upon the following rationale.
II. FACTUAL & PROCEDURAL BACKGROUND
20/20 Communications, Inc. ("20/20"), is a national direct-sales and marketing company incorporated in the state of Delaware, with its principal place of business located in Fort Worth, Texas. (Compl. (doc. 1) 3; Defs.' Mot. to Dismiss (doc. 68) 7.) 20/20 employs numerous field sales managers to work on a variety of its campaigns. (Compl. (doc. 1) 5; Defs.' Mot. to Dismiss (doc. 68) 7.) 20/20 compels its new hires to sign both an employment agreement and a "Mutual Arbitration Agreement" ("MAA") upon employment. (Id. )
The MAA acts as the sole agreement between the parties regarding dispute resolution. The MAA's various clauses that are relevant to the present motion are detailed below. At the outset, the MAA stipulates that the parties will submit all disputes and claims to arbitration:
Employee and Employer ... both agree that all disputes and claims between them, including those related to Employee's employment with Employer and any separation therefrom ... shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator ... and that judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.... Employer and Employee voluntarily waive all rights to trial in court before a judge or jury on all claims between them.
(Defs.' App. to Mot. to Dismiss (doc. 69) 87) (emphasis added.) With few exceptions, the claims subject to arbitration under the *571 MAA include, without limitation, claims for:
discrimination, harassment, or retaliation; wages, overtime, benefits or other compensation; breach of any express or implied contract; violation of public policy; personal injury; and tort claims including defamation, fraud, and emotional distress.
(Id. ) Under its terms, both the Federal Arbitration Act, 9 U.S.C. § 1 et. seq., and Texas law govern actions to enforce the MAA, compel arbitration, or enforce or vacate an arbitration award. (Id. )
The MAA goes on to detail the scope of the arbitrator's authority and the applicable rules governing any arbitration. The arbitrator is limited to determining the disputed matter consistent with controlling law and the MAA. (Id. at 88.) In doing so, the arbitrator will apply the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes except where these rules are inconsistent with the agreement. (Id. ) Should the parties disagree over issues relating to the MAA's formation or meaning, "the arbitrator will hear and resolve those arbitrability issues." (Id. ) It also contains an integration clause providing that "this is the complete agreement between the parties on the subject of arbitration and supersedes any other understandings on the subject." (Id. at 89.)
Last, the MAA addresses the procedures, or lack thereof, for combining arbitration demands into a collective proceeding:
[T]he parties agree that this Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding to the maximum extent permitted by law. This means that the arbitrator will hear only individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law .... Employer may use this Agreement to defeat any attempt by Employee to file or join other employees in a class, collective, or joint action lawsuit or arbitration, but the Employer shall not retaliate against Employee for any such attempt.
(Pl's. App. in Supp. of Response to Defs. Mot. to Dismiss (doc. 71) 10) (emphasis added.)
Between April 11 and May 13, 2016, eighteen of 20/20's field sales managers individually filed for arbitration of their claims that 20/20 had failed to pay overtime compensation--a violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. (Defs.' Mot. to Dismiss (doc. 68) 11.) Although each plaintiff brought his claims individually, each demand for arbitration indicated that they sought an "arbitrator with knowledge of employment law, specifically the FLSA, collective actions under the FLSA and the National Labor Relations Act." (Defs.' App. to Mot. to Dismiss (doc. 69) 21-38) (emphasis added.)
On August 5, 2016, 20/20 asserted that one of the defendants filed an amended claim asserting class/collective action claims for arbitration following an initial case-management conference. (Id. at 40.) In that amended claim, the claimant included a collective-action allegation that the arbitrator recognized as causing a conflict with the MAA.[1] (Id. at 43.) The arbitrator ordered 20/20 to move to seek a threshold determination that the arbitration *572 could proceed as a collective action. (Id. )
20/20 then filed the current action with the Court on August 31, 2016. (Compl. (doc. 1).) 20/20 sought two declaratory judgments declaring that: 1) the Court, not an arbitrator, was the proper adjudicative body to decide whether class arbitration was available under the MAA; and 2) class arbitration was unavailable under the MAA in this instance. (Id. at 2.) 20/20 also requested injunctive relief enjoining Defendants from submitting the class-arbitration issue to any arbitrator and precluding them from pursuing class arbitration of claims addressed in the MAA. (Id. )
In September 2016, 20/20 moved for entry of a preliminary injunction on the rationale that it would be forced to defend eighteen distinct class arbitrations brought by Defendants throughout the country, which would amount to an irreparable injury. The Court disagreed and denied 20/20's motion in February 2017. (Order Den. Mot. for Prelim. Inj. (doc. 52).) In doing so, the Court construed the MAA's delegation clause to stipulate that the parties contemplated that particular issues would be decided by an arbitrator and that class arbitrations were a plausible consideration.[2] (Order Den. Mot. for Prelim. Inj. (doc. 52) 4.) The Court also applied Fifth Circuit precedent in circumstances where, as here, parties have incorporated the AAA rules into their arbitration agreements to indicate that they agreed to arbitrate arbitrability. (Id. )
In November 2016, 20/20 moved for a temporary restraining order seeking identical relief to that outlined in its motion for a preliminary injunction. (Pl.'s Mot. for a TRO (doc. 27).) The Court denied the motion that same month on identical grounds that 20/20 would not suffer irreparable harm from having to defend eighteen different class arbitrations nationwide. (Order Denying Mot. for Temporary Restraining Order (doc. 35) 2-3.) At most, the Court determined, 20/20 "may suffer unfavorable decisions, which may later be challenged through appropriate legal channels." (Id. at 2.) The Court denied 20/20's motion for reconsideration regarding this order in February 2017. (Order Den. Mot. for Recons. (doc. 52) 4,5.)
20/20 then made an interlocutory appeal to the Fifth Circuit regarding this Court's orders on 20/20's motion for a preliminary injunction and motion for reconsideration.[3] (Pl.'s Notice of Interlocutory Appeal (doc. 53).) On February 2, 2018, the Fifth Circuit dismissed 20/20's appeal for lack of jurisdiction on the rationale that it is not permitted to consider appeals from interlocutory orders that refuse to enjoin arbitration under the FAA. (Order (doc. 58) 2.)
The Fifth Circuit's decision led Defendants to move to reopen the case in this Court. (Defs.' Mot. to Reopen Case (doc. 59.) After ordering updated briefing following 20/20's notice to the Court that the *573 United States Supreme Court's decision in Epic Systems Corp. v. Lewis , --- U.S. ----, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018), disposed of the matter by holding that class-action waivers in arbitration agreements must be enforced, Defendants filed an updated motion to dismiss. (Pl.'s Notice of Case Dispositive (doc. 61).) 20/20 responded by filing a second motion for a preliminary injunction (doc. 74).)
III. LEGAL STANDARD
1. Applicable Procedural Rule
Federal Rule of Civil Procedure 12(b)(1) provides the framework for the Court's analysis of this motion. It allows a party to challenge a district court's subject-matter jurisdiction to adjudicate an action. Fed. R. Civ. P. 12(b)(1). Under the rule, the party asserting that jurisdiction exists has the burden of proof. Ramming v. U.S. , 281 F.3d 158, 161 (5th Cir. 2001). When deciding a Rule 12(b)(1) motion to dismiss, "a court may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Den Norske Stats Oljeselskap As v. HeereMac Vof , 241 F.3d 420, 424 (5th Cir.), cert. denied, 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002). A district court should grant a Rule 12(b)(1) motion only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would warrant relief. Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss. , 143 F.3d 1006, 1010 (5th Cir. 1998). If the court determines that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).
2. Applicable Arbitration Statute
Section 2 of the FAA outlines the statutory law applicable to Defendants' motion. It states that a contract's written provision "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It follows that federal policy strongly favors arbitration and " 'ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.' " Mastrobuono v. Shearson Lehman Hutton, Inc. , 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting Volt Info. Sci., Inc. v. Bd. of Trs. , 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ).
In the Fifth Circuit, courts generally adhere to a two-step inquiry to determine whether to compel arbitration. Webb v. Investacorp, Inc. , 89 F.3d 252, 257-58 (5th Cir. 1996). First, the Court must determine whether the parties agreed to arbitrate the dispute. Id. at 258. An agreement to arbitrate is demonstrated where (1) a valid agreement to arbitrate exists between the parties; and (2) the dispute in question falls with the agreement's scope. Id. Once the Court concludes that the parties agreed to arbitrate their dispute, it must then decide whether any external legal constraints foreclose arbitration of the dispute. Id.
IV. ANALYSIS
1. MAA Class-Arbitration Discussion
a. Arguments of the Parties
Since this motion presents complex issues of contractual interpretation, the Court provides a summary of the parties' arguments. Defendants insist that because there is no dispute regarding whether the parties agreed to arbitrate FLSA claims and because the MAA contains language *574 that transfers authority from the Court to an arbitrator to decide issues arising from the MAA's formation and meaning, the Court does not possess subject-matter jurisdiction over this matter. (Defs.' Mot. to Dismiss (doc. 68) 18-19.) They construe the MAA's language--"[i]f Employer and Employee disagree over issues concerning the formation or meaning of this Agreement, the arbitrator will hear and resolve these arbitrability issues"--as a delegation clause transferring authority over those issues' determination to an arbitrator and not a federal court. (Defs.' App. to Mot. to Dismiss (doc. 69) 88); (Defs.' Mot. to Dismiss (doc. 68) 23.)
Defendants further point to language in the MAA that incorporates the AAA's rules requiring an arbitrator to determine arbitrability issues. Defendants' theory remains that this incorporation implicitly applies the AAA's Supplementary Rules to the agreement. (Defs.' Mot. To Dismiss (doc. 68) 25.) Those Supplementary Rules govern class arbitrations and apply to any AAA dispute regardless of whether the MAA explicitly included them. (Id. )
Defendants also proceed on a contractual-interpretation theory that the incorporation of broad language into an arbitration agreement defines the agreement's scope. From this perspective, the MAA's language that the agreement applies to "all disputes and claims between the parties" is sufficiently broad to indicate that an arbitrator would determine arbitrability issues. (Id. at 28.)
20/20 views the matter differently and has adopted an alternative interpretation of the MAA. This interpretation rests on four positions. First, 20/20 possesses rights under its employment agreements, which incorporate the MAA, to avoid class arbitrations and mandate that Defendants arbitrate their claims individually. (Pl's. Response to Defs.' Mot. to Dismiss (doc. 70) 15.) Those rights are upheld via enforcement provisions that mandate that an employee consents to jurisdiction and venue in Tarrant County, Texas.[4] (Id. ) It follows that a court, not an arbitrator, would remain the proper authority to compel Defendants to arbitrate their claims individually and intervene to prevent an improper arbitration from progressing.
Second, the MAA does not empower an arbitrator to rule on whether class arbitration is permissible. That is because the MAA does not contain a comprehensive delegation clause that completely empowers an arbitrator to decide all arbitrability issues. (Id. at 19.) Rather, the MAA only reserves to the arbitrator the arbitrability of issues related to the MAA's formation and meaning. Therefore, the issue of consolidating claims into a class arbitration should be decided by a court since this issue is unrelated to formation or meaning. (Id. )
Third, the MAA does not incorporate all of the AAA rules because the MAA prohibits their application "where such rules are inconsistent with [the] [MAA], in which case the terms of [the] [MAA] will govern. (Defs.' App. to Mot. to Dismiss (doc. 69) 88); (Pl.'s Resp. to Defs.' Mot. to Dismiss (doc. 70) 22.) In Defendant's view, this provision does not incorporate the AAA Supplementary Rules regarding class arbitration *575 because those Rules contradict the MAA's contractual language. (Id. )
Last, the MAA's broad contractual language does not refer all disputes to arbitration. (Id. at 23.) 20/20 argues that the MAA includes express language that excludes "actions to enforce [the MAA or] compel arbitration." (Id. at 24.) 20/20 takes that to mean that the agreement's provision stating that the MAA applies to "all disputes and claims between the parties" does not include class arbitration issues since those issues are cabined off from this broad language. Since the MAA specifically reserves the issue of enforcement for judicial determination, 20/20 says, a court remains the proper adjudicative body to assess the class-arbitration issue. (Id. )
b. Delegation-Clause Analysis
At the outset, the Court turns to the delegation-clause issue at the heart of the parties' dispute. Simply stated, a delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Ctr., W., Inc. v. Jackson , 561 U.S. 63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). A delegation clause's presence in an arbitration agreement raises a different issue: " 'Who should have the primary power to decide' whether the claim is arbitrable[?]" Kubala v. Supreme Prod. Servs. , 830 F.3d 199, 202 (5th Cir. 2016) (citing First Options of Chi., Inc. v. Kaplan , 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ). "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." Id. The incorporation of a delegation clause into an arbitration agreement binds the court to "refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." Id. "Gateway" questions of "arbitrability" include whether the arbitration agreement covers a particular controversy. Rent-A-Ctr. , 561 U.S. at 68-69, 130 S.Ct. 2772.
When a party argues that an arbitration agreement contains a delegation clause "giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes" from a court's regular two-step inquiry, but remains limited. Kubala , 830 F.3d at 201 (citing Kaplan , 514 U.S. at 942, 115 S.Ct. 1920 ). In these situations, the Court first assesses "whether the parties entered into any arbitration agreement at all. " Id. (emphasis in original). If such an agreement arose "the only question ... is whether the purported delegation clause is in fact a delegation clause-that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." Id. at 202. The party arguing "that an arbitrator has authority to decide arbitrability 'bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question....' " Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber Mfg. , 765 F.3d 396, 408 (5th Cir. 2014) (quoting ConoccoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union , 741 F.3d 627, 630 (5th Cir. 2014) ). "If there is a delegation clause, the motion to [dismiss] should be granted in almost all cases."[5] Kubala , 830 F.3d at 202.
State-law contract principles govern issues of validity and scope.
*576 Carter v. Countrywide Credit Indus., Inc. , 362 F.3d 294, 301 (5th Cir. 2004). In the present case, Texas law governs the MAA's terms and policies. (Defs.' App. to Mot. to Dismiss (doc. 69) 87.)
Since the parties do not contest that they entered into a valid arbitration agreement, the Court proceeds to the analysis's second component concerning whether the MAA contains a delegation clause. (Defs.' Mot. to Dismiss (doc. 68) 7); (Pl.'s Response (doc. 70) 9.) The specific provision at issue states that "[i]f Employer and Employee disagree over issues concerning the formation or meaning of this agreement, the arbitrator will hear and resolve these arbitrability issues." (Defs.' App. to Mot. to Dismiss (doc. 69) 88.) The analysis now focuses on whether the current dispute amounts to a question of arbitrability that fits within the above-quoted language. Put another way, does the issue of class arbitration concern either the formation or meaning of the MAA?
Such questions fall into a category of gateway issues that parties typically expect a court to decide such as whether "the parties are bound by a given arbitration clause" or whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy." Howsam v. Dean Witter Reynolds , 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). These disputes are reserved for judicial determination unless the parties clearly and unmistakably provide otherwise. Id. at 84, 123 S.Ct. 588. The Court determines that the parties clearly and unmistakably provided otherwise in this instance.
When construing a contract, a court's objective remains to give effect to the parties' intentions. Reliant Energy Servs., Inc. v. Enron Can. Corp. , 349 F.3d 816, 822 (5th Cir. 2003). A contract is ambiguous if its meaning is susceptible to multiple interpretations. Id. at 821-22. When an agreement is unambiguous, its terms are afforded their plain meaning and are enforced as written. Id. at 822 ; see also Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Crocker , 246 S.W.3d 603, 606 (Tex. 2008) (acknowledging that words are given their "plain meaning"); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co. , 811 S.W.2d 552, 555 (Tex. 1991) ("If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written.")
The Court discerns that the MAA's language amounts to an unambiguous delegation clause and relies upon its terms' plain language to ascertain its meaning. In this instance, the MAA empowers an arbitrator to hear disagreements between the parties related to the MAA's formation or meaning. While the issue of whether the parties may arbitrate their claims as a class does not implicate the MAA's formation, it certainly concerns the MAA's meaning. A contract's "meaning" plainly refers to "that which is conveyed (or intended to be conveyed) by a written or oral statement or other communicative act." BLACK'S LAW DICTIONARY (10th ed. 2014). In this instance, the term "meaning of this agreement" refers to what the parties intended to be conveyed by it. It follows that whether the parties intended for claimants to bring arbitration claims as a class or individually relates to the MAA's meaning, a decision explicitly reserved for an arbitrator.
Federal courts have construed similar contractual language as a delegation clause empowering an arbitrator to interpret threshold issues stemming from an agreement's meaning. In Rent-A-Center , the Supreme Court held the following was a valid delegation clause: "The Arbitrator ...
*577 shall have exclusive authority to resolve any dispute relating to the interpretation , applicability, [or] enforceability ... of this Agreement." 561 U.S. at 66, 130 S.Ct. 2772 (emphasis added). Likewise, in Fozard v. C.R. England, Inc. , this Court construed the following language as a valid delegation clause:
Covered [c]laims shall include any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the parties relating to the scope of the arbitrator's powers, the interpretation or enforceability of this Agreement or any part thereof, or the arbitrability of any dispute.
243 F.Supp.3d 789, 795 (N.D. Tex. 2017) (emphasis added). Similar to the delegation clause in Rent-A-Center and Fozard , the MAA delegates to an arbitrator the determination of arbitrability issues that rely upon interpreting the MAA. That delegation divests the Court of its authority to decide the issue as to whether Defendants may proceed as a class in this arbitration. The Court must remain a sideline spectator as this dispute continues to play out in arbitration because it lacks the subject-matter jurisdiction to intervene.
c. Analysis of the MAA's Incorporation of AAA Rules
The Court also finds additional support for its rationale through the MAA's incorporation of AAA rules. The MAA's language plainly states that:
[t]he arbitrator selected by the parties will administer the arbitration according to the National Rules for the Resolution of Employment Disputes (or successor rules) of the American Arbitration Association ("AAA") except where such rules are inconsistent with this Agreement, in which case the terms of this Agreement will govern.
(Defs.' App. to Mot. to Dismiss (doc. 69) 88.)
The AAA's arbitration rules include those governing the specific action and separate Supplementary Rules for Class Arbitration which were enacted following the Supreme Court's decision in Green Tree Fin. Corp. v. Bazzle , 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). The AAA's Employment Rules explain that:
The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.
AAA Employment Arbitration Rules and Mediation Procedures, R. 1 (Eff. Nov. 1, 2009).[6] It follows that the AAA rules are effective even if the parties have not specified particular rules, and the Supplementary Rules apply to any dispute controlled by any of the rules of the AAA.[7] In particular, *578 Supplementary Rule 3 explains, in part, that:
Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award").[8]
Applied in this instance, the AAA's incorporation into the MAA indicates that the parties agreed to arbitrate the issue as to whether Defendants may proceed as a class.[9]
The Fifth Circuit has held that "the express adoption of these rules presents clear and convincing evidence that the parties agreed to arbitrate arbitrability." Petrofac, Inc. v. DynMcDermott Petroleum Operations Co. , 687 F.3d 671, 675 (5th Cir. 2014). Reed v. Fla. Metro. Univ. , 681 F.3d 630, 636 (5th Cir. 2012), abrogated on other grounds, Oxford Health Plans LLC v. Sutter , 569 U.S. 564, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013), held that a district court properly referred a class-arbitration issue to an arbitrator. The Fifth Circuit expressly declined to resolve the issue of whether class arbitration amounted to an arbitrability question for the court since "the parties here consented to the Supplementary Rules, and therefore agreed to submit the class arbitration issue to the arbitrator." Id. at 634 n. 3. In this instance, the AAA's incorporation into the MAA indicates that the parties agreed to arbitrate the issue as to whether Defendants may proceed as a class, and this Court may properly refer this issue to an arbitrator.
Moreover, the Court expressly declines to follow 20/20's theory that the MAA's provisions precluding class arbitrations overrides the incorporated AAA's Supplementary Rules that allow for such arbitrations. Under this theory, the MAA's preclusion language would operate as a supremacy clause rendering the AAA's Supplementary Rules on class arbitration inapplicable. Simply put, a determination of this theory lies further beyond the threshold than this Court can proceed because it involves the Court's assessing the class-arbitration question, an inquiry that is plainly vested in the arbitrator. Accordingly, 20/20 would have to rely on an arbitrator to assess the extent of the interplay, if any, between the AAA's Supplementary Rules and the MAA's preclusion provisions on class arbitrations.
d. Analysis of MAA's Incorporation of Broad Language
The Court also concludes that the MAA's incorporation of broad language indicating a preference for disputes to be resolved via arbitration divests the Court of its authority to decide the class-arbitrability question. As outlined above, the MAA states that:
Employee and Employer ... both agree that all disputes and claims between them, including those related to Employee's employment with Employer and any separation therefrom ... shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator....
(Defs.' App. to Mot. to Dismiss (doc. 69) 87) (emphasis added.)
*579 In Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc. , the Fifth Circuit held that "when an arbitration agreement at issue includes broad coverage language, such as a contract clause submitting all disputes, claims, or controversies arising from or relating to the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator." Robinson v. J. & K. Admin. Mgmt. Serv., Inc. , 817 F.3d 193, 196 (5th Cir. 2016) (emphasis original) (internal quotation omitted).
Here, the above-italicized language is arguably broader than that addressed in Pedcor Management as the former refers to all disputes arising from employment while the latter is more narrowly focused on all disputes arising from the arbitration agreement. That distinction, however, is unimportant. The law in this circuit remains that, "when an agreement includes broad coverage language, such as a contract clause submitting all disputes, claims, or controversies arising from or relating to the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator." Robinson , 817 F.3d at 196 (emphasis original) (internal quotation omitted); see also Gonzales v. Brand Energy & Infrastructure Servs., Inc. , No. H-12-1718, 2013 WL 1188136, at *5 (S.D. Tex. Mar. 20, 2013) (holding that a class arbitrability question was to be resolved by an arbitrator due, in part, to an arbitration agreement's inclusion of broad language). Because the parties have agreed to submit to arbitration "all disputes" arising from the employment relationship, the Court determines that the parties agreed to have an arbitrator decide the class-arbitrability question.
e. Analysis of Applicability of Epic Systems, Corp. v. Lewis
The Court also disagrees with 20/20 that the Supreme Court's recent holding in Epic Systems conclusively governs this matter. Epic Systems decided the question of whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, no matter what they agreed with their employers?" 138 S.Ct. at 1619. The Court held that arbitration agreements requiring individual arbitration, instead of allowing class or collective actions, were enforceable under the FAA. Id. at 1632.
20/20's arguments view Epic Systems as imposing a bright-line rule indicating that arbitration agreements that contain a class-action waiver effectively override other provisions that may delegate the class-action question to an arbitrator. (Pl.'s Resp. to Defs.' Mot. to Dismiss (doc. 70) 28.) That is not the case. While Epic Systems resolved a circuit split regarding class-waiver provisions by recognizing their enforceability, it did not disturb the open question regarding the arbitrability of class claims and who should resolve them. See JPay, Inc. v. Kobel , 904 F.3d 923, 926 (11th Cir. 2018) (recognizing that questions of arbitrability of class claims remain unresolved post Epic Systems ). Accordingly, Epic Systems does not conclusively answer the difficult question raised in this motion.
Moreover, whether application of Epic Systems resolves the underlying issue here is a matter that the MAA submits to an arbitrator. Again, this Court is not the proper adjudicator of that issue where the parties have evinced a strong contractual *580 intent to have an arbitrator decide this gateway issue.
2. Issue Preclusion
Having addressed the motion's substance, the Court now clarifies which Defendants are impacted by this order. As outlined above, six of the eighteen arbitrators involved in this matter's underlying arbitrations have issued final orders on this motion's very issue. (Defs.' App. to Mot. to Dismiss (doc. 69) 45-79.) Those determinations raise the question as to whether 20/20 is precluded from subsequently raising this issue in this forum. The parties diverge over whether a final award in the underlying arbitration is necessary to preclude 20/20 from bringing this motion on behalf of those parties whose arbitrators have decided this question.
Issue preclusion, alternatively known as collateral estoppel, applies when the following elements are satisfied: " '(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action.' " In re Southmark Corp. , 163 F.3d 925, 932 (5th Cir. 1999) (quoting RecoverEdge L.P. v. Pentecost , 44 F.3d 1284, 1290 (5th Cir. 1995) ). On the issue of the final judgment requirement, this Court has held that "unlike res judicata, collateral estoppel does not require a final judgment on the merits ... Issue preclusion does require, however, that the issues in the two suits be identical." Rolls-Royce Corp. v. Heros, Inc. , 576 F.Supp.2d 765, 778 (N.D. Tex. 2008).
Issues raised and adjudicated in arbitration may have a preclusive effect if raised in subsequent litigation. "As a general matter, arbitral proceedings can have preclusive effect even in litigation involving federal statutory and constitutional rights." Grimes v. BNSF Ry. Co. , 746 F.3d 184, 188 (5th Cir. 2014) (emphasis added). A district court possesses "broad discretion" to determine whether to apply the doctrine, "at least when the arbitral pleadings state issues clearly, and the arbitrators set and explain their findings in a detailed written memorandum." Univ. Am. Barge Corp. v. J-Chem, Inc. , 946 F.2d 1131, 1136 (5th Cir. 1991). Moreover, "[a] district court in exercising its discretion must carefully consider whether procedural differences between arbitration and the district court proceedings might prejudice the party challenging the use of offensive collateral estoppel." Id. If the procedural differences "might be likely to cause a different result," then collateral estoppel becomes inappropriate. Id. at 1138.
The Court determines that an application of collateral estoppel is appropriate in this matter where arbitrators have issued final decisions on the question of whether a federal court or an arbitrator possesses the authority to assess the class-waiver issue. Upon review of the determinations, the Court concludes that the issues raised in these proceedings were identical to the one currently before the Court. The issue was briefed and argued and arbitrators made determinations outlining the rationale for their holdings in a detailed fashion. There are no discernible differences between these determinations and a memorandum opinion and order issued by a federal district court that would point to procedural differences between the proceedings. Since such a dispute-resolution process closely aligns with the Court's own procedural and analytical approach, it is appropriate to apply collateral estoppel in this instance. Accordingly, the Court's order applies only to arbitrations in this matter where the class-waiver issue remains unresolved.
*581 3. Dismissal
Defendants urge the Court to dismiss the entire action. (Defs.' Mot. to Dismiss (doc. 68) 31.) However, Defendants do not reach the question of whether the case should be stayed or dismissed upon referral to arbitration. In the Fifth Circuit, when all issues before a federal district court are arbitrable, the court should dismiss the action. See Alford v. Dean Witter Reynolds, Inc. , 975 F.2d 1161, 1164 (5th Cir. 1992). It follows that the Court should dismiss the action in its entirety.
V. CONCLUSION
The Court concludes that the issue of whether Defendants should be permitted to proceed as a class remains for an arbitrator, not this Court to decide. Accordingly, the Court GRANTS Defendants' Motion to Dismiss (doc. 67). 20/20's Motion for a Preliminary Injunction (doc. 74) is DENIED as moot.

Defendants ultimately filed an amended claim for arbitration clarifying that they wished to proceed collectively in all eighteen (18) actions. (Defs.' App. to Mot. to Dismiss (doc. 68) 11.)

The Court also recognized that the clause's interpretation was fairly debatable, and that Fifth Circuit precedent directed the Court to decide unclear construction question in arbitration's favor. (Order Den. Mot. for Prelim. Inj. (doc. 52) 4.)

While the interlocutory appeal was pending, the parties briefed and argued identical issues in ten of the original eighteen arbitrations. Six have issued final clause-construction awards, of which five held that the arbitrator, not a federal district court, possessed exclusive jurisdiction to resolve the class-arbitration issue. (Defs.' App. to Mot. to Dismiss (doc. 69) 45-79.) 20/20 sought review of one of the arbitrators' clause-construction awards with this Court. The Court confirmed the award and that ruling is currently on appeal to the Fifth Circuit. See 20/20 Commc'n v. Crawford , No. 17-cv-00929 (N.D. Tex. Feb. 28, 2018).

The enforcement provision states: "Any litigation or proceeding that may be brought by either party involving the enforcement of these Agreements or the rights, duties, or obligations of any party to these Agreements shall be brought exclusively in Tarrant County in the state of Texas. Employee hereby consents to jurisdiction and venue in Tarrant County, Texas as consideration for these Agreements." (Pl's. App. to Resp. to Defs.' Mot. to Dismiss (doc. 71) 20.)

The Fifth Circuit has explained that a court will decline to enforce a delegation clause only in an exceptional case where an argument for arbitration is "wholly groundless." Kubala , 830 F.3d at 202 n. 1 (citing Douglas v. Regions Bank , 757 F.3d 460, 464 (5th Cir. 2014) ). However, "so long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." Id. (citing Douglas , 757 F.3d at 463 ).

Available at: https://www.adr.org/sites/default/files/Employment% 20Rules.pdf.

The Supplementary Rules provide that: "These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules." Available at: https://www.adr.org/sites/default/files/Supplementary% 20Rules% 20for% 20Class% 20Arbitrations.pdf

See note 7, supra .

It is inconsequential that the MAA does not explicitly incorporate the AAA's Supplementary Rules. Federal courts have remained unpersuaded that "failure to reference a particular subset of the AAA Rules removes the agreement from the rule in Reed ...." Langston v. Premier Directional Drilling, L.P. , 203 F.Supp.3d 777, 788 (S.D. Tex. 2016).