# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-10260

United States Court of Appeals
Fifth Circuit

**FILED**
July 22, 2019

Lyle W. Cayce
Clerk

————

20/20 COMMUNICATIONS, INCORPORATED,

Plaintiff - Appellant

v.

LENNOX CRAWFORD,

Defendant – Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with 19-10050

20/20 COMMUNICATIONS, INCORPORATED,

Plaintiff - Appellant

v.

RANDALL BLEVINS; KATHY DIGRUILLES; JAMES COBBLE; BRINA HEALY; JULIA MUCHEKE-BARRETT; PETER SALDORIGA; LOREN SIMPSON; CHARLES SMITH; BENJAMIN STANCZIK; FREDDIE TUBBS; KYIL WAITS; DEBORAH BUFFAMANTI; DAVID VINE; JUAN CASTILLO; LENNOX CRAWFORD; THOMAS DEMIRIS; KIMBERLY KOPPELMAN; REDWAN NEGASH,

Defendants - Appellees

————

Appeals from the United States District Court
for the Northern District of Texas

————

No. 18-10260 c/w 19-10050

Before SMITH, BARKSDALE, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

The parties entered an arbitration agreement that permits the arbitrator to "hear only individual claims," and prohibits arbitration "as a class or collective action . . . to the maximum extent permitted by law." An arbitrator nevertheless commenced a class arbitration under this agreement, on the theory that the parties' class arbitration bar is prohibited by federal law. The question before us today is not whether the arbitrator's class arbitration decision is correct, but whether class arbitration should have been an issue for the arbitrator, rather than a court, to decide in the first place.

Ordinarily, courts must refrain from interfering with arbitration proceedings. But as our sister circuits have held, and as we now hold today, class arbitration is a "gateway" issue that must be decided by courts, not arbitrators—absent clear and unmistakable language in the arbitration clause to the contrary.

And no such contrary language exists here. Quite the opposite, in fact: As noted, the arbitration agreement permits individual arbitrations only, and it explicitly prohibits arbitrators from commencing class arbitrations to the maximum extent permitted by law. That language is, at best, in substantial tension with—and in any event, not clear and unmistakable support for—the notion that the parties authorized the arbitrator to decide the gateway issue of class arbitration.

Accordingly, we hold that courts, not arbitrators, must decide the gateway issue of class arbitration presented here, and accordingly remand for further proceedings.

I.

20/20 Communications, Inc. is a national direct-sales and marketing company. The company employs field sales managers and requires as a

condition of employment that they sign the company's Mutual Arbitration Agreement.   That agreement contains, among other provisions, a class arbitration bar, under which employees agree to bring only individual actions, and not class or collective actions, to arbitration.

A number of field sales managers filed separate individual arbitration claims, but later amended them to assert identical class claims.  In response, 20/20 sought a declaration in federal district court that the issue of class arbitrability is a gateway issue for the court rather than the arbitrator to decide, and that the class arbitration bar does indeed foreclose class arbitration.  *See 20/20 Commc'ns, Inc. v. Blevins*, No. 4:16-cv-00810-Y (N.D. Tex.) (Means, J.) ("*Blevins*").

During the pendency of the federal district court proceedings in *Blevins*, some employees asked their individual arbitrators to issue clause construction awards holding that the class arbitration bar is prohibited by the National Labor Relations Act.  Of the six arbitrators who issued clause construction awards, one concluded that the class arbitration bar is indeed unenforceable under the NLRA.

In response, 20/20 filed a new action in federal district court to vacate that arbitrator's clause construction award invalidating the class arbitration bar.  The district court rejected 20/20's request and instead confirmed the clause construction award.  *See 20/20 Commc'ns, Inc. v. Crawford*, No. 4:17-cv-929-A (N.D. Tex.) (McBryde, J.) ("*Crawford*").  20/20 appealed that ruling.

After we heard oral argument in *Crawford*, the district court in *Blevins* held that the arbitration agreement authorized the arbitrator, rather than the court, to determine class arbitrability, and dismissed the complaint accordingly.  20/20 has now appealed that ruling as well.

We consolidated *Blevins* and *Crawford* for purposes of appeal, and now decide both appeals here.

No. 18-10260 c/w 19-10050

II.

When parties agree to arbitrate certain disputes, courts naturally expect those parties to resolve those disputes before an arbitrator, rather than a court. Certain threshold questions of arbitrability, however, are typically reserved for courts to decide, absent "clear and unmistakable" language in the arbitration agreement to the contrary. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). For example, if parties dispute whether they in fact ever agreed to arbitrate at all, such questions of contract formation are considered "gateway" issues that presumptively must be decided by courts, not arbitrators. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). The principal question presented in these appeals is whether the availability of class arbitration, like contract formation, is a gateway issue that a court must decide, in the absence of clear and unmistakable language subjecting such questions of arbitrability to an arbitrator rather than a court.

To date, the Supreme Court has not decided whether class arbitrability is such a gateway issue. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 n.4 (2019). Nor have we.[1]

But a number of our sister circuits have—and all of them have concluded that class arbitrability is a gateway issue. *See Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013); *Herrington v. Waterstone*

---

[1] Our decision in *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003), did not decide the issue. As our court has explained, *Pedcor* "did not . . . stand for the proposition that the availability of class determination must always be decided by the arbitrator." *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 196 (5th Cir. 2016). Rather, *Pedcor* holds only that, "*if parties agree* to submit the issue of arbitrability to the arbitrator, then the availability of class or collective arbitration is a question for the arbitrator instead of the court." *Id.* at 197 (emphasis added).

No. 18-10260 c/w 19-10050

*Mortg. Corp.*, 907 F.3d 502, 506–07 (7th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935–36 (11th Cir. 2018).

We agree with our sister circuits and hold today that class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary. Like our sister circuits, we regard the decision to arbitrate a dispute as a class, rather than on an individual basis, as a threshold question of arbitrability, because class arbitrations differ from individual arbitrations in fundamental ways.

As the Supreme Court has repeatedly observed, "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). After all, in a class action, "[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (citation omitted).

This is not just a difference in form—it has significant practical and substantive consequences as well. Class actions dramatically increase not only the size but also the complexity of the dispute. *See, e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (noting that class arbitration "makes the process slower, more costly, and more likely to generate procedural morass than final judgment"). That is not just because there are more parties involved. It is also because, as our sister circuits have observed, class actions raise important due process concerns. *See, e.g., Reed Elsevier*, 734 F.3d at 598; *Catamaran*, 864 F.3d at 972. Because class actions bind not only named parties, but also countless unnamed parties as well, due process requires that

No. 18-10260 c/w 19-10050

absent parties "be afforded notice, an opportunity to be heard, and a right to opt out of the class." *AT&T Mobility*, 563 U.S. at 349. That raises the costs and reduces the efficiency of arbitration. *See*, *e.g.*, *Catamaran*, 864 F.3d at 972.

In addition, one of the perceived benefits of arbitration, in contrast to litigation, is the protection of the privacy and confidentiality of the parties. That privacy and confidentiality is threatened in a class arbitration, thereby "frustrating the parties' assumptions when they agreed to arbitrate." *Stolt-Nielsen*, 559 U.S. at 686. *See also*, *e.g.*, *Catamaran*, 864 F.3d at 971–72 (same).

So we have no difficulty agreeing with our sister circuits who have described the availability of class arbitration as "a foundational question of arbitrability." *Herrington*, 907 F.3d at 507. We hold that class arbitrability is a gateway issue.

III.

Having determined that class arbitration is a gateway issue that is presumptively decided by courts, not arbitrators, our next task is to determine whether the parties here clearly and unmistakably agreed to allow the arbitrator to determine that issue. *See*, *e.g.*, *First Options*, 514 U.S. at 944.

The arbitration agreement at issue in these appeals contains the following language, permitting individual arbitrations only and prohibiting class arbitrations to the maximum extent permitted by law:

> "[T]he parties agree that this Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means that an arbitrator will hear only individual claims and *does not have the authority to fashion a proceeding as a class or collective action* or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law." (Emphasis added.)

We conclude that this class arbitration bar operates not only to bar class arbitrations to the maximum extent permitted by law, but also to foreclose any

suggestion that the parties meant to disrupt the presumption that questions of class arbitration are decided by courts rather than arbitrators.

After all, it is difficult for us to imagine why parties would categorically prohibit class arbitrations to the maximum extent permitted by law, only to then take the time and effort to vest the arbitrator with the authority to decide whether class arbitrations shall be available. Having closed the door to class arbitrations to the fullest extent possible, why would the parties then re-open the door to the possibility of class arbitrations, by announcing specific procedures to govern how such determinations shall be made?

In all events, we find nothing in the arbitration agreement that gives such authority to the arbitrator with the clear and unmistakable language required by Supreme Court precedent.

For their part, the employees cite three provisions that vest the arbitrator with various general powers:

- "If Employer and Employee disagree over issues concerning the formation or meaning of this Agreement, the arbitrator will hear and resolve these arbitrability issues."

- "The arbitrator selected by the parties will administer the arbitration according to the National Rules for the Resolution of Employment Disputes (or successor rules) of the American Arbitration Association ('AAA') *except where such rules are inconsistent with this Agreement, in which case the terms of this Agreement will govern.*" (Emphasis added.)

- "*Except as provided below*, Employee and Employer, on behalf of their affiliates, successors, heirs, and assigns, both agree that all disputes and claims between them . . . shall be determined exclusively by final and binding arbitration." (Emphasis added.)

Divorced from other provisions of the arbitration agreement (most notably, the class arbitration bar), these three provisions could arguably be construed to authorize arbitrators to decide gateway issues of arbitrability such as class arbitration. Under the first provision cited by the employees, for example, the availability of class arbitration (and perhaps even the specific question of whether the class arbitration bar is "permitted by law") is arguably a dispute over the "meaning" of the agreement. The incorporation of AAA rules in the second cited provision is also arguably relevant here, considering that Rule 3 of the AAA Supplementary Rules for Class Arbitration provides that the arbitrator is empowered to determine class arbitrability. And the third provision states in broad terms that "*all* disputes and claims between them" shall be determined by the arbitrator, language arguably capacious enough under this court's previous rulings to include disputes over class arbitrability. *See Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 196 (5th Cir. 2016) ("[W]hen an agreement includes broad coverage language, such as a contract clause submitting '*all* disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator.").

Whether these provisions, standing alone, clearly and unmistakably empower the arbitrator to decide questions of class arbitrability is a question we ultimately need not answer, however. Because when we compare these provisions with the class arbitration bar at issue in this case, we conclude that none of them state with the requisite clear and unmistakable language that arbitrators, rather than courts, shall decide questions of class arbitrability.

To begin with, two of these provisions include express exception clauses (as highlighted above). These exception clauses expressly negate any effect these provisions might have in the event they conflict with any other provision

of the arbitration agreement—as they plainly do here in light of the class arbitration bar.

And even putting aside the exception clauses, none of these provisions speak with any specificity to the particular matter of class arbitrations. The class arbitration bar, by contrast, specifically prohibits arbitrators from arbitrating disputes as a class action, and permits the arbitration of individual claims only. *See, e.g., Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 203(c) ("specific terms and exact terms are given greater weight than general language")).

Accordingly, the provisions cited by the employees do not clearly and unmistakably overcome the legal presumption—reinforced as it is here by the class arbitration bar—that courts, not arbitrators, must decide the issue of class arbitration.

\* \* \*

In *Blevins*, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. In *Crawford*, we vacate the judgment of the district court and remand with instructions to dismiss the case as moot, in light of our holding today that the proposed class arbitration in this case is a gateway issue for the court, rather than the arbitrator, to decide.