**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DIMITRI SHIVKOV, individually and as a trustee of the Phoenix 2010 Revocable Trust; VASSIL ZHIVKOV; KRISTINA TSONEV; SPECTRA SERVICES, INC.; DVS HOLDINGS LLC; ROBERT C. MILLER; BRENDA MAE MILLER; BRUCE G. ROBINSON; SARA VAN ALSTYNE ROBINSON; SYMPHONY HOMES LLC; SYMPHONY DEVELOPMENT CORPORATION; KEITH BUTLER; REBECCA M. BUTLER; ERIC K. WILKE; JULIE T. WILKE; JOHN LINDER; NINA LINDER; AFFILION OF COBRE VALLEY LLC; AFFILION OF HUNTSVILLE PLLC; AFFILION OF TEXAS PLLC; TAYLOR-WILKE HOLDINGS LLC; TRADITIONS EMERGENCY MEDICINE PA; TREADSTONE EQUITY GROUP LLC; UTA INVESTMENTS LLC; BOOMERANG WB LLC; AZ STORAGE 1 LLC; AZ STORAGE 2 LLC; BOOMERANG SONORAN LLC; RV STORAGE LLC; STONE HAVEN LODGE LLC; UTA HOLDINGS LLC; WILKE MEDICAL DIRECTION PLLC; 5T CAPITAL FUND II LLC; 5T CAPITAL HOLDINGS LLC; 5T CAPITAL LLC; INGENUITY AUTO | No. 19-16746<br><br>D.C. No. 2:18-cv-04514-SMM<br><br><br>OPINION |

LEASING LLC; INGENUITY AVIATION LLC; INGENUITY EQUITY GROUP II LLC; INGENUITY EQUITY GROUP III LLC; INGENUITY EQUITY GROUP LLC; INGENUITY LEASING COMPANY II LLC; INGENUITY LEASING COMPANY LLC; INGENUITY MATRIX, INC.; INGENUITY PROFESSIONAL SERVICES PLLC; BOURNE TEMPE LAND LLC, on behalf of themselves and all others similarly situated; PAUL M. MCHALE; CYNTHIA MCHALE; KEITH E. PEREIRA, Individually and as a trustee of The Blaser Family Revocable Trust Dated March 10, 2006; KIMBERLY BLASER, Individually and as a trustee of The Blaser Family Revocable Trust Dated March 10, 2006; BRIAN R. TIFFANY; RYAN P. FRANK; KATHERINE S. FRANK; CATION LLC; FLORIDA CITRUS HOLDINGS LLC; MCHALE CAPITAL MANAGEMENT LLC; PS BAILEY LLC; BLASER MANAGEMENT LLC; BLUE HORIZON HOLDINGS LLC; BUTLER MEDICAL GROUP, INC.; DEVOTION HOMES LLC; GLASS HOUSE LLC; MAUI LUXURY RENTALS LLC; SILVER MEADOW INVESTING LLC; T&G INVESTMENTS LLC; TREADSTONE CORE3 LLC; TW MANAGEMENT LLC; KAMAOLE LUXURY RENTALS LLC; KANNAPALI BEACH HOLDINGS

LLC; OUR RETIREMENT LLC;
RESILIANT LLC; NADIM B. BIKHAZI;
KAREN A. KOSTLUK-BIKHAZI;
BRADLEY S. BULLARD; CATHLEEN
M. BULLARD; BLAKE G. WELLING;
STEPHANIE G. WELLING; BLAKE
WELLING MD PC; BRIAN TIFFANY
MD PC; UTAH SPINE CARE LLC;
WESTERN STATES MEDICAL LLC;
OGDEN CLINIC PROFESSIONAL
CORPORATION; BORSIGHT, INC.,
*Plaintiffs-Appellants*,

v.

ARTEX RISK SOLUTIONS, INC.; TSA
HOLDINGS LLC, FKA Tribeca
Strategic Advisors LLC; TBS LLC,
DBA PRS Insurance; KARL HUISH;
JEREMY HUISH; JIM TEHERO;
ARTHUR J. GALLAGHER & COMPANY;
DEBBIE INMAN; EPSILON ACTUARIAL
SOLUTIONS LLC; JULIE A. EKDOM;
AMERISK CONSULTING LLC;
PROVINCIAL INSURANCE PCC;
TRIBECA STRATEGIC ACCOUNTANTS
LLC; TRIBECA STRATEGIC
ACCOUNTANTS PLC,
*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted July 7, 2020
Seattle, Washington

Filed September 9, 2020

Before:  MICHAEL DALY HAWKINS, D. MICHAEL
FISHER,[*] and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's order compelling individual arbitration and dismissing a putative class action alleging violations of the Racketeer Influenced and Corrupt Organizations Act and Arizona law.

Plaintiffs alleged that pursuant to agreements between themselves and two defendants, defendants formed captive insurance companies that plaintiffs owned, and to which they paid insurance premiums.  Plaintiffs claimed the payments as tax-deductible business expenses without recognizing them as taxable income.  The IRS audited plaintiffs, issued delinquency notices, and sought to impose penalties.  After settling with the IRS, plaintiffs filed suit,

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

alleging that the captives were illegal and abusive tax shelters, about which defendants failed to inform or advise them.

The panel affirmed the district court's order compelling arbitration pursuant to an arbitration clause in the parties' agreements.  First, the panel held that the agreements were not unenforceable on the grounds plaintiffs raised.  Although plaintiffs asserted that defendants breached a fiduciary duty to point out and fully explain an arbitration clause, they identified no state law authority recognizing such a duty. Addressing an issue of first impression concerning the survival of arbitration obligations following contract termination, the panel held that the agreements did not expressly negate the presumption in favor of post-termination arbitration or clearly imply that the parties did not intend for their arbitration obligations to survive termination.

Second, the panel held that under Arizona contract law, the arbitration clause encompassed all plaintiffs' claims.

Third, joining other circuits, the panel held that the availability of class arbitration is a gateway issue that a court must presumptively decide.  The panel concluded that the parties' agreements did not clearly and unmistakably delegate that issue to the arbitrator.  Because the agreements were silent on class arbitration, they did not permit class arbitration.

Finally, the panel concluded that pursuant to Arizona law on alternative estoppel, all non-signatory defendants could compel arbitration pursuant to the agreements.

**COUNSEL**

W. Ralph Canada Jr. (argued), David R. Deary, Jim L. Flegle, Wilson E. Wray, John McKenzie, Donna Lee, and Tyler M. Simpson, Loewinsohn Flegle Deary Simon LLP, Dallas, Texas; Garrett W. Woktyns and James A. Bloom, Schneider Wallace Cottrell Konecky Wotkyns, LLP, Scottsdale, Arizona; for Plaintiffs-Appellants.

Stephen V. D'Amore (argued), Scott P. Glauberman, Michael A. Skokna, and Reid F. Smith, Winston & Strawn LLP, Chicago, Illinois; Barbara J. Dawson, Joseph G. Adams, and Taryn J. Gallup, Snell & Wilmer LLP, Phoenix, Arizona; for Defendants-Appellees Artex Risk Solutions Inc., Arthur J. Gallagher & Company, and Debbie Inman.

Karl M. Tilleman (argued) and Erin E. Bradham, Dentons, Phoenix, Arizona; for Defendants-Appellees TSA Holdings LLC, TBS LLC, Karl Huish, Jeremy Huish, Jim Tehero, Provincial Insurance PCC, and Tribeca Strategic Accountants LLC.

J. Steven Sparks and Vincent Miner, Sanders & Parks, Phoenix, Arizona, for Defendants-Appellees Epsilon Actuarial Solutions LLC and Julie A. Ekdom.
J. Michael Low and Paul Gerding, Jr., Kutak Rock, Scottsdale, Arizona, for Defendant-Appellee AmeRisk Consulting LLC.

Michael J. Plati and Michael S. Rubin, Dickinson Wright PLLC, Phoenix, Arizona, for Defendant-Appellee Tribeca Strategic Accountants PLC.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiffs[1], some eighty-one individuals and related business entities, variously entered into agreements (the Agreements) with Defendants Artex Risk Solutions, Inc. (Artex) and TSA Holdings, LLC, formerly Tribeca Strategic Advisors, LLC (Tribeca).  Pursuant to these Agreements, Artex and Tribeca formed and managed captive insurance companies that Plaintiffs owned, and to which Plaintiffs paid insurance premiums.  Plaintiffs claimed the payments as tax-deductible business expenses without recognizing them as taxable income.  Although this arrangement offered the prospect of tax benefits, that prospect proved fleeting.  The IRS audited Plaintiffs, issued delinquency notices, and sought to impose penalties.

After settling with the IRS, Plaintiffs brought this putative class action suit against Defendants.[2]  Plaintiffs allege that the captives were illegal and abusive tax shelters, about which Defendants failed to inform or advise Plaintiffs.  Plaintiffs' pursuit of this suit, however, faced a roadblock: the Agreements contain an arbitration clause (the Arbitration

---

[1] Because the Plaintiffs are so numerous, and are each named in the caption, we do not recount the names of all of them in the body of this opinion.

[2] In addition to Artex and Tribeca, Plaintiffs sued officers of Artex, Tribeca, and the parent company of Artex, namely, Defendants Karl Huish, Jeremy Huish, Jim Tehero, and Arthur J. Gallagher & Co. Plaintiffs also sued TBS LLC d/b/a PRS Insurance; Debbie Inman (an Artex employee); Epsilon Actuarial Solutions, LLC, Julie A. Ekdom (CEO of Epsilon); AmeRisk Consulting, LLC; Provincial Insurance, PCC; Tribeca Strategic Accountants, LLC; and Tribeca Strategic Accountants, PLC.  We refer to all as the "Defendants."

Clause or Clause). The district court granted Defendants' motion to compel arbitration and dismissed the operative complaint without prejudice. Plaintiffs appeal.

We resolve several issues here. *First*, we hold that the Agreements are not unenforceable on the grounds Plaintiffs raise. Although Plaintiffs assert that Artex and Tribeca breached a fiduciary duty to point out and fully explain an arbitration clause, they identify no state law authority recognizing such a duty. Addressing an issue of first impression in our circuit concerning the survival of arbitration obligations following contract termination, we hold that the Agreements do not expressly negate the presumption in favor of post-termination arbitration or clearly imply that the parties did not intend for their arbitration obligations to survive termination. *Second*, we hold that the Arbitration Clause encompasses all Plaintiffs' claims. *Third*, we join seven of our sister circuits in holding that the availability of class arbitration is a gateway issue that a court must presumptively decide. The Agreements here do not clearly and unmistakably delegate that issue to the arbitrator. Because the Agreements are silent on class arbitration, they do not permit class arbitration. *Finally*, we conclude that all non-signatory Defendants may compel arbitration pursuant to the Agreements. Thus, we affirm.

## BACKGROUND

### I.  The Agreements and the Arbitration Clause

Between 2009 and 2012, the various groups of Plaintiffs retained Artex and Tribeca, both insurance management companies, to provide services concerning the formation and

management of captive insurance companies for Plaintiffs.[3] Pursuant to the Agreements, Artex and Tribeca, with support from the other Defendants, conducted feasibility studies concerning the creation of the respective captives, created and managed the captives, calculated the captives' estimated federal tax payments, caused annual federal tax returns for the captives to be prepared and filed, maintained the captives' accounting records, and reinsured the captives.

As is relevant here, the Agreements contain an Arbitration Clause:

> You and we agree that in the event of any dispute that cannot be resolved between the parties, that we will agree to seek to resolve such disputes through mediation in Mesa, Arizona, and if that fails, that all disputes will be subject to binding arbitration in Mesa, Arizona, with arbitrators to be agreed upon by the parties, and if no agreement is reached, then arbitrated by the American Arbitration Association (AAA). Each party shall bear its own costs in such mediation and arbitration. To reduce time and expenses, we each waive our right to litigate against one another regarding the services provided and obligations pursuant to this Agreement, and instead you and we have chosen binding arbitration. All claims or disputes will be governed by Arizona law.

Several Agreements also contain a Termination and Withdrawal section, which includes a clause concerning the

---

[3] Artex acquired Tribeca in 2010.

survival of the terms of that section following termination of the Agreement.**[4]**

## II. This Litigation

After settling with the IRS for tax liability issues arising from deductions that they claimed for the premiums that they paid to the captives, Plaintiffs filed a putative class action complaint in the District of Arizona. In the operative one hundred seventy-page First Amended Complaint (FAC), Plaintiffs raised claims against all Defendants for breach of fiduciary duty, negligence, negligent misrepresentation, disgorgement, rescission, breach of contract and the duty of good faith and fair dealing, fraud, civil conspiracy, aiding and abetting breach of fiduciary duty and fraud, violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 *et seq.*, and violations of the Arizona RICO statute, Ariz. Rev. Stat. § 13-2301 *et seq.* Defendants moved to compel arbitration, and separately moved to dismiss. The district court granted the motion to compel, ordered Plaintiffs to arbitrate their claims on an individual basis, and dismissed the FAC without prejudice. Plaintiffs timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). "We review a district judge's order to compel arbitration *de*

---

**[4]** The Agreements of the following Plaintiffs contain this section: Shivkov, Miller, Linder, Bikhazi, Welling, Bullard, Frank, and McHale, as well as their corresponding entities. The Agreements of Plaintiffs Butler, Wilke, Pereira, and Tiffany do not contain this section.

*novo*." *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).  We review factual findings for clear error, and the interpretation and meaning of contract provisions de novo.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

## ANALYSIS

Subject to certain exceptions not at issue here, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs arbitration agreements in contracts involving interstate commerce.  "The FAA reflects both a 'liberal federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract,'. . . ."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  State law governs the validity, revocability, and enforceability of a contract.  *Id.*  Federal substantive law governs the scope of an arbitration agreement.  *Kramer*, 705 F.3d at 1126.

## I.   The Arbitration Clause is Enforceable

We turn first to the enforceability of the Clause. Pursuant to the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The savings

clause of this provision permits a party to challenge an arbitration agreement pursuant to a generally applicable state law contract defense, such as fraud, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996); *Kilgore*, 718 F.3d at 1058. "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). Plaintiffs challenge the enforceability of the Arbitration Clause on two grounds. First, for all Agreements, Plaintiffs argue that Artex and Tribeca breached a state law fiduciary duty concerning arbitration clauses. Second, for only some Agreements, Plaintiffs argue that the Clause did not survive termination of the Agreements. We address each challenge in turn.

## A.  The Breach of Fiduciary Duty Challenge

Plaintiffs aver that Artex and Tribeca had a fiduciary duty to point out and explain the Arbitration Clause, which they failed to do. Thus, Plaintiffs claim, Artex and Tribeca effectively suppressed its existence in the less than ten-page Agreements that Plaintiffs received and signed, and thereby committed the legal equivalent of fraud.[5] Fraud is a basis to revoke a contract under Arizona law. *U.S. Insulation, Inc. v.*

---

[5] Plaintiffs made a similar argument in challenging the Clause as procedurally unconscionable. The district court rejected that argument, finding that that the record demonstrates that "Plaintiffs are sophisticated people and businesses capable of negotiating this type of commercial relationship." The court further explained that although Plaintiffs argued that Artex and Tribeca rushed them into signing the Agreements, only one Plaintiff identified a time frame for signing an Agreement, which spanned "a few weeks." Plaintiffs do not challenge in this appeal the court's determination that the Clause is not unconscionable.

*Hilro Constr. Co., Inc*., 705 P.2d 490, 493–94 (Ariz. Ct. App. 1985). However, to show fraud on the ground raised here, Plaintiffs must show that Artex and Tribeca owed the fiduciary duty that Plaintiffs claim exists under Arizona law. We will assume *arguendo* that a fiduciary relationship arose between Plaintiffs and Artex at some point in Defendants' provision of captive insurance services.[6] Even assuming so, Plaintiffs have not shown that, under Arizona law, it would encompass a duty to point out and fully explain an arbitration clause.

Plaintiffs direct us to a federal district court decision interpreting Arizona law. *See Katt v. Riepe*, No. CV-14-08042-PCT-DGC, 2014 WL 3720515 (D. Ariz. July 25, 2014). However, "we must adhere to state court decisions— not federal court decisions—as the authoritative interpretation of state law." *Daniel v. Ford Motor Co*., 806 F.3d 1217, 1223 (9th Cir. 2015). Neither did the underlying Arizona state court decision on which *Katt* relied hint at the existence of a duty that would require a contracting party to point out and fully explain an arbitration clause. *See Leigh v. Loyd*, 244 P.2d 356 (Ariz. 1952); *Lerner v. DMB Realty, LLC*, 322 P.3d 909 (Ariz. Ct. App. 2014). Although these decisions articulated a fiduciary duty to disclose all material facts, that duty arose in the context of the fiduciary relationship between a real estate broker and the broker's principal. *See Leigh*, 244 P.2d at 358 ("It is well settled that a confidential relation exists between a real estate agent and his principal," which "impose[s] a duty on [the agent] to disclose the true facts."); *Lerner*, 322 P.3d at 919 ("A [real estate] broker owes a fiduciary duty to disclose

---

[6] Because we assume this relationship, it is unnecessary to address Plaintiffs' request for additional discovery about whether a fiduciary relationship existed.

material facts to its client."). No such relationship existed here.

The case before us is like one that the Arizona Court of Appeals has already considered. In *Dueñas v. Life Care Centers of America, Inc.*, 336 P.3d 763 (Ariz. Ct. App. 2014), the plaintiff challenged the enforceability of an arbitration agreement by arguing that an asserted fiduciary's failure to obtain the plaintiff's signature for the agreement rendered the agreement unenforceable. *Id.* at 771. The court rejected that argument because the plaintiff had identified no authority establishing that the duties involved in a fiduciary relationship extend to "the purely commercial aspects of their relationship." *Id.* Like the plaintiff there, Plaintiffs fail to identify any Arizona authority that would subject Artex and Tribeca to a fiduciary duty in connection with an arbitration clause. Thus, Plaintiffs have failed to show that the Clause is unenforceable on this ground.

## B.  The Arbitration Clause Survival Challenge

Plaintiffs next argue that the Arbitration Clause in only *some* of their Agreements is unenforceable because it did not survive termination of the Agreements.[7] Whether a party has agreed to arbitrate disputes following contract termination depends upon whether the arbitration obligations created under that contract remain enforceable. *See Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 513–14 & n.9 (1st Cir. 2020). We first address the

---

[7] Plaintiffs raise this argument only for Plaintiffs Shivkov, Miller, Linder, Bikhazi, Welling, Bullard, Frank, and McHale, as well as their corresponding entities. Thus, this argument does not apply to Plaintiffs Butler, Wilke, Pereira, and Tiffany.

framework applicable to post-termination arbitration and then apply it here.

### 1.  The Applicable Framework

Although the Supreme Court has not addressed the issue of post-termination arbitration of disputes in the FAA context, the Court has addressed this issue in the collective bargaining context.  In *Litton Financial Printing Division v. NLRB*, the Court recognized a "presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication' [for] matters and disputes arising out of the relation governed by contract."  501 U.S. 190, 204 (1991) (quoting *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977)).  The Court explained that "[w]e presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement."  *Id*. at 208.  For the presumption to apply, the parties' dispute must have "its real source in the contract." *Id.* at 205.  This occurs "only where [the dispute] involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, *or* where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.* at 206 (emphasis added).

Although we have not addressed *Litton*'s application to the FAA context, five sister circuits have.   *See Biller*, 961 F.3d at 513; *Breda v. Cellco P'ship*, 934 F.3d 1, 7 (1st Cir. 2019); *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395–96 (6th Cir. 2014); *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520–21 (D.C. Cir. 2009); *Koch v. Compucredit Corp*., 543 F.3d 460, 465–66 (8th Cir. 2008);

*CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254–56 (2d Cir. 1999), *abrogated on other grounds as explained in Accenture LLP v. Spreng*, 647 F.3d 72, 76 (2d Cir. 2011). We are persuaded that the presumption also applies here. As the Sixth Circuit has explained, "the need for an arbitration provision to have post-expiration effect is intuitive, because if 'the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect.'" *Huffman*, 747 F.3d at 395 (citation omitted). Thus, we also apply the *Litton* framework here.

### 2. The Application of the *Litton* Presumption Here

We do not doubt that the dispute here has "its real source in the contract," *Litton*, 501 U.S. at 205, because Plaintiffs raised no argument on this issue in their opening brief and thus waived the issue. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). Plaintiffs argue, however, that the parties expressly negated the presumption, or clearly implied that their arbitration obligations under the Agreements at issue would not survive termination. Plaintiffs point to the following text in the "Termination and Withdrawal" section:

> The terms of this section shall survive the termination of this Agreement and/or the dissolution or other effective termination of the business of [Artex or Tribeca] or the insurance company.

Invoking the doctrine of *expressio unius est exclusio alterius*, Plaintiffs contend that the survival clause contains an exclusive list of the provisions that survive termination which excludes the Arbitration Clause and thus expressly negates the presumption or clearly implies that the parties did not intend for their arbitration obligations to survive termination. *See Herman Chanen Constr. Co. v. Guy Apple Masonry Contractors Inc.*, 453 P.2d 541, 543 (Ariz. Ct. App. 1969) ("[T]he expression in a contract of one or more things of a class, implies the exclusion of all things not expressed. . . .").

The Sixth Circuit has already addressed the impact of a survival clause on post-termination arbitration obligations. *See Huffman*, 747 F.3d at 394–98. In *Huffman*, the Sixth Circuit determined that the freestanding survival clause there—which included half the agreement's provisions but not the arbitration clause—was insufficient to overcome the presumption in favor of post-termination arbitration. *Id.* Acknowledging that the *expressio unius* doctrine "present[ed] a trick[y] question," the Sixth Circuit determined that "considering the contract *as a whole*—the survival clause and its relationship to the other clauses in the agreement—is the correct way to determine whether the parties unambiguously intended for the arbitration clause to expire with the contract." *Id.* at 397 (emphasis added). The Sixth Circuit adopted this mode of analysis due to "the strong federal policy in favor of arbitration," *id.* at 394, pursuant to which a court "resolv[es] *any doubts as to the parties' intentions in favor of arbitration*," *id.* at 395 (quoting *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007)). The Sixth Circuit also noted that the presumption of arbitrability should not be denied for "broadly-worded arbitration clauses" unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute. *Id*.

We are persuaded that looking to the Agreements as a whole is the proper mode of analysis here. The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983)); *see also Kramer*, 705 F.3d at 1126 (recognizing strong federal policy in favor of arbitration). Although Plaintiffs contend that the Arbitration Clause is not as broadly worded as the clause in *Huffman*, we reject that argument in Part II and thus the scope of the Clause also lends support to looking to the contract as a whole. Finally, Arizona law also looks to the contract as a whole to ascertain the parties' intent. *Elm Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941–42 (Ariz. Ct. App. 2010) ("To determine the parties' intent, we 'look to the plain meaning of the words as viewed in the context of the contract as a whole.'" (quoting *United Cal. Bank v. Prudential Ins. Co.*, 681 P.2d 390, 411 (Ariz. Ct. App. 1983))).

Looking to the Agreements as a whole, the survival clause is insufficient to expressly negate the presumption in favor of post-termination arbitration or clearly imply that the parties intended for their arbitration obligations to terminate with the Agreements. The Agreements lack an exhaustive survival clause. Instead, the clause here appears in and concerns only the insular terms established by the "Termination and Withdrawal" section. We doubt that the parties intended for an insular survival clause tucked into a section establishing unique obligations and duties upon the termination of the Agreement to comprehensively identify

the Agreement terms that would survive termination.**8**  That doubt grows here because, as in *Huffman*, the Agreements contain severability and integration clauses outside the section with the survival clause.  747 F.3d at 397.  "[I]t is illogical to conclude that upon expiration of the contract, the parties no longer intended" for these provisions to apply. *See id.*

Other provisions of the Agreements also suggest ambiguity about the survival clause on which Plaintiffs rely. The Agreements contain sections that disclaim liability for any underwriting losses and impose general limitations on liability, whether direct or indirect, arising out of, in connection with, or related in any way to an Agreement or services provided pursuant to it.  The latter provision expressly precludes certain types of damages that may be recovered, including, in relevant part, punitive damages, taxes and interest due to any taxing authority or government agency, penalties payable to any taxing authority or government agency, and attorneys' fees.  These are limitations that the parties are unlikely to have intended to terminate with the Agreements, particularly given the broad scope of the limitations on liability and the fact that the limitations plainly concern events that are likely to occur post-termination.

Considering the Agreements as a whole, we cannot find that the parties expressly negated the presumption in favor of post-termination arbitration, or clearly implied that their

---

**8** Although Plaintiffs argue that reading the contract as a whole renders the survival clause mere surplusage, that argument circularly justifies not looking to the entire contract by presupposing that the clause has the meaning Plaintiffs ascribe it.  The point of the analysis here is to ascertain whether the clause plainly bears that meaning or not.

arbitration obligations would not survive termination. We might have arrived at a different conclusion if the survival clause stated that only the terms of that section and no other terms in the Agreement would survive termination, if the Agreement included a comprehensive survival clause, or even if the Arbitration Clause explicitly stated that it does not survive termination. Of course, the Agreements contain no such language. Because "we cannot say with certainty that the parties did not intend for the arbitration clause to survive expiration of the contract," the parties' arbitration obligations remain intact. *See id*. at 398.

## II. The Arbitration Clause Encompasses Plaintiffs' Claims

We turn next to whether the Arbitration Clause encompasses all of Plaintiffs' claims here. "[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. Under Arizona law, a contract is ambiguous when it "can be reasonably construed in more than one manner." *Leo Eisenberg & Co., Inc. v. Payson*, 785 P.2d 49, 52 (Ariz. 1989). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985). In the face of any ambiguity, "under the federal presumption in favor of arbitration, an arbitrator would have jurisdiction to arbitrate claims." *Comedy Club, Inc. v. Improv W. Assocs*., 553 F.3d 1277, 1285 (9th Cir. 2009).

The Clause provides in the first instance (with emphasis added) that: "You and we agree that in the event of *any dispute* that cannot be resolved between the parties, that we will agree to seek to resolve *such disputes* through mediation . . . and if that fails, that *all disputes* will be subject to binding arbitration." Defendants understandably rely on this sweeping language to conclude that the Clause includes all Plaintiffs' claims.

Plaintiffs, however, draw our attention to other language in the Clause which they argue narrows its scope. Plaintiffs focus on the Clause's third sentence: "[t]o reduce time and expenses, we each waive our right to litigate against one another regarding the services provided and obligations pursuant to this Agreement, and instead you and we have chosen binding arbitration." It is a "standard rule of contract interpretation" that "specific terms control over general ones." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 P.3d 885, 891 (9th Cir. 2003)); *see also Elm Ret. Ctr., LP*, 246 P.3d at 942 ("[B]ecause specific contract provisions express the parties' intent more precisely than general provisions, specific provisions qualify the meaning of general provisions.").[9] Treating the Clause's third sentence as a more specific term concerning scope, we discern that the parties intended to arbitrate "any" and "all disputes"

_____

[9] We will assume that Plaintiffs meant to rely on this standard and directly applicable contract rule because Plaintiffs' reliance on *Mesquite Lake Assocs. v. Lurgi Corp.*, 754 F. Supp. 161 (N.D. Cal. 1991), is unpersuasive. Unlike in *Mesquite*, the Clause does not limit its scope through a provision that "any controversy or dispute between the Parties concerning this Agreement and *specifically subject to resolution pursuant to this Article shall be subject to arbitration* . . . ." *Id.* at 162 (emphasis added).

"regarding the services provided and obligations pursuant to this Agreement."  So understood, the Clause still remains broad.  *See, e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999) (concluding that a clause encompassing "[a]ll disputes arising in connection with this Agreement" should be construed and applied liberally); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991) (similar).  The district court methodically explained why all of the claims here are subject to arbitration on this reading.

Plaintiffs nonetheless tell us that the district court erred in sending their various non-breach of contract claims to arbitration by pointing to a disclaimer in the Agreements, pursuant to which Artex and Tribeca explained that they "do[] not provide any legal, tax, or accounting advice."  Plaintiffs aver that "tax or legal advice" was not among the services and obligations under the Agreements, and thus their claims concerning such advice are excluded from arbitration.  This argument hinges entirely on the meaning of "tax or legal advice."  Curiously, Plaintiffs do not offer *any* interpretation of those terms.  Repeating a bare assertion that this phrase excludes their non-contract claims without supporting argument does not make it so.[10]  *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008) (en banc) ("It is well-established that a bare assertion in an appellate brief, with no supporting argument, is insufficient to preserve a claim on appeal.").  Because the

---

[10] Although Plaintiffs rely on *Khan v. BDO Seidman, LLP*, 935 N.E.2d 1174 (Ill. App. Ct. 2010), that case says nothing about the issue here, namely the meaning of the phrase "tax or legal advice" for the Agreements at issue.  Thus, apart from the fact that we are not bound by that decision, Plaintiffs' list of factual comparisons with that case does nothing to overcome their failure to offer any meaning of these terms in the Agreements here.

Agreements provide that Artex and Tribeca would prepare federal tax returns and calculate estimated tax payments for the captives, Plaintiffs' argument, at best, points to ambiguity that we must resolve in favor of arbitration. *See Comedy Club*, 553 F.3d at 1286. Thus, we still conclude that the Clause encompasses all Plaintiffs' claims.

## III.     The Availability of Class Arbitration

Plaintiffs brought this suit as a putative class action against Defendants involving "hundreds if not thousands" of class members.   The district court, however, ordered individual arbitration.  We must determine next (1) whether the availability of class arbitration is a "gateway question" that a court must presumptively decide and, if so, (2) whether the parties nevertheless clearly and unmistakably delegated the issue to the arbitrator, and (3) if not, whether the Agreements permit class arbitration.  We address each issue in turn.

### A.  The Availability of Class Arbitration is a Gateway Issue for a Court to Presumptively Decide

The Supreme Court has distinguished between two categories of issues, each of which has a different presumption as to whether a court or an arbitrator should decide them. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Martin v. Yasuda*, 829 F.3d 1118, 1122–23 (9th Cir. 2016).  In the first category of issues are "potentially  dispositive  gateway  question[s] . . . of arbitrability" that "contracting parties would likely have expected a court to . . . decide[]." *Howsam*, 537 U.S. at 83 (internal quotation marks omitted).  "This category includes issues . . . such as 'whether the parties are bound by a given arbitration clause' or whether 'an arbitration clause in a concededly binding contract applies to a particular type of

controversy.'"  *Martin*, 829 F.3d at 1123 (quoting *Howsam*, 537 U.S. at 84).    "These disputes are 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'"  *Id*. (quoting *Howsam*, 537 U.S. at 83). The second category encompasses "procedural" issues, which are "presumptively not for the judge, but for an arbitrator, to decide."  *Id.* (quoting *Howsam*, 537 U.S. at 84). Examples of issues in this category are whether a party has satisfied the arbitral forum's statute of limitations for filing a case, whether a party has satisfied certain requirements of a procedural grievance, and "allegation[s] of waiver, delay, or a like defense to arbitrability."  *Howsam*, 537 U.S. at 84–85 (quoting *Moses H. Cone*, 460 U.S. at 25).

The Supreme Court has not had occasion to decide whether the availability of class arbitration is a gateway issue for a court to decide pursuant to this framework.  *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 n.4 (2019) (not deciding the question because the parties agreed that the issue was one for the court to decide); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (not deciding the question because the parties agreed that the issue was one for the arbitrator to decide); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010) (not deciding the question because the parties entered into a supplemental agreement that expressly assigned the issue of the availability of class arbitration to the arbitration panel).

Seven of our sister circuit courts, however, have concluded that the availability of class arbitration is a gateway question for a court to presumptively decide.[11]  *See*

---

[11] The Second and Tenth Circuits have assumed without deciding that the availability of class arbitration is a gateway issue that is presumptively for a court to decide.  *See Dish Network, L.L.C. v Ray*,

*20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718–19 (5th Cir. 2019); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506–07 (7th Cir. 2018); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935–36 (11th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016); *Opalinski v. Robert Half Int'l Inc*., 761 F.3d 326, 334–35 (3d Cir. 2014); *Reed Elsevier, Inc. v. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598–99 (6th Cir. 2013). We have also concluded that the availability of class arbitration is a gateway issue in an unpublished and nonprecedential memorandum disposition. *See Eshagh v. Terminix Int'l Co*., 588 F. App'x 703, 704 (9th Cir. 2014).

Faced with whether class arbitration is a gateway question here, we see no reason to create an unnecessary circuit split, or to depart from what we have already suggested. We find persuasive the three reasons that the Seventh Circuit has succinctly identified for why class arbitration is a gateway issue. *See Herrington*, 907 F.3d at 507–08. The first and second reasons assimilate the issue of class arbitration into what we have already recognized are gateway issues presumptively for a court to decide: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam,* 537 U.S. at 84). The third reason concerns

---

900 F.3d 1240, 1245 (10th Cir. 2018) (acknowledging the consensus among "many circuits" but assuming the issue and concluding that the parties clearly and unmistakably delegated the issue to an arbitrator); *Wells Fargo Advisors, L.L.C. v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018) (same).

the Supreme Court's treatment of class arbitration. We briefly consider each of these reasons.

The Seventh Circuit has explained first that "[t]he availability of class . . . arbitration involves a foundational question of arbitrability: whether the potential parties to the arbitration agreed to arbitrate." *Herrington*, 907 F.3d at 507. This is the familiar gateway question of whether there is an agreement to arbitrate *between the parties*. *See Brennan*, 796 F.3d at 1130. Plaintiffs filed a putative class complaint, seeking to represent "hundreds if not thousands of" possible class members. The availability of class arbitration raises the question whether any of those possible class members have actually agreed to arbitration in the first place as well as the question whether the Agreements show that Artex and Tribeca agreed to arbitrate rather than litigate with those members. Thus, answering this question "resolves the foundational question of 'with whom' [Artex and Tribeca] chose to arbitrate." *See Herrington*, 907 F.3d at 508 (quoting *Stolt-Nielsen*, 559 U.S. at 683).

Relatedly, the Seventh Circuit has explained that "whether a contract permits class . . . arbitration involves a second . . . question of arbitrability: whether the agreement to arbitrate covers a particular controversy." *Id.* This is the familiar gateway question of scope. *See Brennan*, 796 F.3d at 1130. Notably, the Clause here provides that "[y]ou and we agree that in the event of any dispute that cannot be resolved between the parties," "such disputes" will be resolved by mediation and arbitration. The availability of class arbitration raises the question whether Artex and Tribeca agreed to arbitrate particular disputes not only with the Plaintiffs, but also with possible class members. Answering this question resolves the question of whether the parties agreed to arbitrate particular disputes.

Third, and "most important[ly]," the Seventh Circuit has explained that class arbitration belongs to the gateway category because "the structural features of class arbitration make it a 'fundamental' change from the norm of bilateral arbitration." *Herrington*, 907 F.3d at 509 (quoting *Stolt-Nielsen*, 559 U.S. at 686). The Supreme Court has all but endorsed this reason for treating class arbitration as a gateway issue. According to the Court, class arbitration: (1) "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment," *Concepcion*, 563 U.S. at 348, (2) "*requires* procedural formality" because "[i]f procedures are too informal, absent class members would not be bound by the arbitration," *id*. at 349, and (3) "greatly increases risks to defendants," *id.* at 350. In short, "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 685. As seven circuits have recognized, the Court's discussion of class arbitration is a weighty thumb on the scale in favor of treating class arbitration as a gateway issue for a court to presumptively decide. *See 20/20 Commc'ns*, 930 F.3d at 719; *Herrington*, 907 F.3d at 509; *JPay*, 904 F.3d at 933–34; *Catamaran Corp.*, 864 F.3d at 971–72; *Del Webb Cmtys.*, 817 F.3d at 875–76; *Opalinski*, 761 F.3d at 333–34; *Reed Elsevier*, 734 F.3d at 598.

We are not persuaded by Plaintiffs' arguments for why we should not treat the availability of class arbitration as a gateway issue for a court. Plaintiffs rely on a concurrence that is concededly not the law of any circuit. *See Dish Network, L.L.C.*, 900 F.3d at 1252–57 (Tymkovich, C.J., concurring). That concurrence criticizes the third reason we have identified as nothing more than "Supreme Court dicta

and good policy." *Id*. at 1255. But when the Court speaks, we should take notice. *See Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992), *as amended* (July 31, 1992) (Noonan, J., concurring in the result in part and dissenting in part) ("[D]icta of the Supreme Court have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold. We should not blandly shrug them off because they were not a holding."). As we have explained, the Supreme Court has repeatedly underscored why class arbitration is different and thus should be treated differently. *See Stolt-Nielsen*, 559 U.S. at 685; *Concepcion*, 563 U.S. at 348–50. Naturally, seven circuits have taken notice, and so do we.

Plaintiffs also argue that class arbitration is a procedural issue for an arbitrator to decide in light of the Court's passing references to class actions as "procedures" in *Epic Systems*, 138 S. Ct. at 1624–25, and the fact that the Federal Rules of Civil Procedure treat class actions as procedural. We are not persuaded. As the Seventh Circuit has observed, *Epic Systems* did not decide whether class arbitration is a gateway question, *see Herrington*, 907 F.3d at 506, and thus that decision is not of any help. More fundamentally, that a class action is a "classically" procedural mechanism in federal court under Federal Rule of Civil Procedure 23, *Dish Network, L.L.C.*, 900 F.3d at 1254 (Tymkovich, C.J., concurring), is of no moment here. In the arbitration context, we are concerned with whether *the parties* to the requested arbitration have *agreed* to that particular dispute resolution, and, if so, what the scope of *that agreement* is. *See Stolt-Nielsen*, 559 U.S. at 687 (underscoring "the consensual basis of arbitration"). Therefore, the relevant metric is not the labeling of a particular mechanism in federal court as "procedural", but rather the categories of gateway issues in reviewing an arbitration agreement that the Court has

instructed determine whether an issue is presumptively for a court or an arbitrator to decide absent *further agreement* by the parties. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (describing gateway questions for a court as issues "*such as* whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" (emphasis added)).

We have already explained how the question of the availability of class arbitration interlocks with gateway issues that a court must presumptively decide. Plaintiffs offer no persuasive reason for why we should nevertheless treat class arbitration as akin to the exemplary questions for an arbitrator to presumptively decide, nor do we see one that would warrant a circuit split. *See Howsam*, 537 U.S. at 85 (identifying as "procedural" questions presumptively for an arbitrator as "whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met"); *see also Global Linguist Solutions, LLC v. Abdelmeged*, 913 F.3d 921, 923 (9th Cir. 2019) (reaching result partly to avoid an unnecessary circuit split). Thus, we conclude that class arbitration is a gateway issue for a court to presumptively decide.

## B. The Parties Did Not Clearly and Unmistakably Delegate the Issue of Class Arbitration to the Arbitrator

Having resolved that class arbitration is a gateway issue, Plaintiffs tell us that the Clause evidences a clear and unmistakable intent to delegate the issue to the arbitrator as follows: (1) the Clause refers to the AAA (*i.e.*, the American Arbitration Association), (2) which renders the AAA Rules applicable, (3) which in turn encompass the AAA's Supplementary Rules, (4) which include Supplementary

Rule 3's instruction that "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class," and (5) thus the parties delegated the issue of class arbitration to the arbitrator.

Plaintiffs' argument touches on a circuit split on whether incorporation of the AAA Rules is sufficient evidence that the parties clearly and unmistakably delegated the issue of class arbitration to the arbitrator. *Compare Catamaran Corp.*, 864 F.3d at 973 (concluding that an arbitration agreement's incorporation of the AAA Rules without specific reference to class arbitration is insufficient); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016) (same), *cert. denied*, 137 S. Ct. 40 (2016), *Reed Elsevier*, 734 F.3d at 599 (concluding that a clause which incorporated the AAA Rules "does not clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration"), *with JPay*, 904 F.3d at 936–42 (reasoning that incorporation of the AAA Rules is sufficient and explaining disagreement with Third, Sixth, and Eighth Circuits).

We need not take sides in this circuit split here because Plaintiffs fail to clear a threshold hurdle. The crux of Plaintiffs' argument is our decision in *Brennan v. Opus Bank*. The arbitration clause there provided that "any controversy or claim arising out of this [Employment] Agreement or [Brennan's] employment with the Bank or the termination thereof . . . shall be settled by binding arbitration *in accordance with the Rules of the American Arbitration Association*." 796 F.3d at 1128 (alterations in original; emphasis added). We concluded that, at least in a contract between sophisticated parties, "incorporation of the AAA Rules constitutes clear and unmistakable evidence that

contracting parties agreed to arbitrate arbitrability." *Id.* at 1130 (internal quotation marks omitted; emphasis added). Thus, we sided with "'[v]irtually every circuit to have considered the issue.'" *Id.* (first alteration in original; quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)). Unlike the arbitration clause in *Brennan*, the Clause does not incorporate the AAA Rules, and thus *Brennan* does not apply.

Unable to identify a textual reference to the AAA Rules, Plaintiffs nonetheless contend that the "obvious and unavoidable implication of an agreement to arbitrate before the AAA is an agreement to submit to the AAA's arbitration rules." But we have never held that a mere reference to the AAA shows clear and unmistakable intent to delegate a gateway issue to an arbitrator, and Plaintiffs identify no authority from any sister circuit holding as much. Even if we thought the "obvious and unavoidable implication" of a reference to the AAA is consent to the AAA Rules when a clause refers *only* to the AAA, the Clause here does not do so. The Clause provides first for mediation, second for arbitration by an arbitrator selected by the parties, and, only if the parties cannot agree on an arbitrator, arbitration before the AAA. We cannot find clear and unmistakable evidence that the parties intended to delegate the gateway issue of class arbitration to the arbitrator by virtue of the AAA Rules when arbitration before the AAA is but the final option in the dispute procedure that the Clause outlines.[12]

---

[12] Plaintiffs contend that only the non-AAA portions of the Clause are an unenforceable bare agreement to agree and thus the AAA is the default option. The FAA and Arizona's Revised Uniform Arbitration Act, however, *both* permit enforcement of an agreement regarding the method of naming or appointing an arbitrator. *See* 9 U.S.C. § 5; Ariz. Rev. Stat. § 12-1503.

In light of the Clause here, Plaintiffs' reliance on *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017), is misplaced. The arbitration clause there provided that *"[t]he arbitration shall be administered by JAMS and conducted in accordance with its Streamlined Arbitration Rules and Procedures (the "Rules"), except as provided otherwise herein."* *Id*. at 1276. Rejecting the plaintiff's argument that the agreement left open the rules that would govern arbitration because the parties could choose another dispute resolution service, the Tenth Circuit explained that "[t]he plain language of the Agreement establishes the JAMS Rules as the default controlling rubric." *Id.* at 1282. The Clause here, however, neither refers to the AAA Rules, nor does it establish those Rules as the "default controlling rubric." *See id*. Although the Clause provides for the possibility that arbitration may occur before the AAA if the parties cannot agree on an arbitrator, "such a possibility is not enough for us to say that" the AAA Rules are the Clause's "ordinary controlling standard." *See id.* Because Plaintiffs do not claim that any other provision demonstrates a clear and unmistakable intent to delegate the availability of class arbitration to the arbitrator, we conclude that the availability of class arbitration remains a gateway issue.

### C.  The Agreements Do Not Permit Class Arbitration

The final issue that we must decide on class arbitration is straightforward. "Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself," *Lamps Plus*, 139 S. Ct. at 1417, namely, "the individualized form of arbitration envisioned by the FAA," *id.* at 1416. As the district court concluded, because the Agreements are silent on class arbitration, they do not

permit it.  Thus, the court properly compelled individual arbitration pursuant to the Agreements.

## IV.     The Non-Signatory Defendants May Compel Arbitration

The final issue for us is whether all Defendants may compel arbitration of Plaintiffs' claims.  Several Defendants are not signatories to the Agreements (the Non-Signatory Defendants).  Although only Jim Tehero and Karl Huish signed the Agreements on Artex and Tribeca's behalf, Plaintiffs concede that these Defendants as well as Jeremy Huish and Arthur J. Gallagher & Co. may compel arbitration.  Nevertheless, Plaintiffs argue that no other Non-Signatory Defendant may compel arbitration.[13]     We disagree.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."     *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)).  Arizona law recognizes alternative estoppel, pursuant to which a non-signatory may compel arbitration of a signatory's claims.  *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125, 134–35 (Ariz. Ct. App. 2012).  A non-signatory may compel arbitration when "each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement," such that "the signatory's claims

---

[13] The remaining Non-Signatory Defendants include TBS LLC d/b/a PRS Insurance; Debbie Inman; Epsilon Actuarial Solutions, LLC; Julie A. Ekdom; AmeRisk Consulting, LLC; Provincial Insurance, PCC; Tribeca Strategic Accountants, LLC; and Tribeca Strategic Accountants, PLC.

arise out of and relate directly to the written agreement." *Id*. at 135 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).[14]  As the district court concluded, all Non-Signatory Defendants may compel arbitration pursuant to this standard.[15]

Plaintiffs' allegations about Defendants' misconduct regarding the captive insurance services presume and "intimately rel[y]" on the existence of the Agreements. *See Kramer*, 705 F.3d at 1132.  We have already determined in Part II that Plaintiffs' claims are subject to arbitration even if we construe the Clause as limited to the services and obligations under the Agreements.  It follows that Plaintiffs' claims necessarily presume the existence of the Agreements. Indeed, the entire complaint concerns Defendants' captive insurance services, which encompassed the formation, oversight, operation, and management of captive insurance companies for Plaintiffs pursuant to the Agreements.  The Agreements also provide that Artex and Tribeca would hire third parties in connection with the services, thus underscoring that the claims presume the existence of the Agreements even for the Non-Signatory Defendants.  *See Sun Valley*, 294 P.3d at 135 (finding that the nonsignatory

---

[14] Alternative estoppel may also apply when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided."  *Sun Valley*, 294 P.3d at 134 (quoting *CD Partners*, 424 F.3d at 798).  Because Defendants do not invoke this ground, we decline to address whether Plaintiffs would be estopped on this basis.

[15] It is unnecessary for us to resolve the parties' dispute about the standard of review for the district court's decision.  Whether we review de novo or for an abuse of discretion, we affirm the district court.

"may nevertheless compel plaintiffs to arbitrate their claims against him" because "the trier of fact will be required to consider the [underlying agreements] in resolving plaintiffs' claims, and [the non-signatory's] conduct is intertwined with that of other defendants who signed the [underlying agreement].").

We are not persuaded by Plaintiffs' counterarguments. Plaintiffs aver that they could bring all their claims against the Non-Signatory Defendants regardless of whether the Agreements existed, and thus alternative estoppel does not apply. This argument proves nothing because it is not the relevant test under Arizona law. *See id.*

Relying on *Kramer*, 705 F.3d at 1133, Plaintiffs argue further that mere allegations of substantially interdependent and concerted misconduct by signatories and non-signatories, standing alone, are insufficient to permit non-signatories to compel arbitration. But in *Kramer* we rejected the non-signatory defendants' invocation of equitable estoppel based only on "sparse portions" of the pleadings concerning interdependent conduct by the defendants. *Id.* In contrast, the FAC makes pervasive allegations of concerted conduct by the Defendants. We have also explained why Plaintiffs' claims presume the existence of the Agreements even for the Non-Signatory Defendants. Thus, we conclude that all Non-Signatory Defendants can compel arbitration.

## CONCLUSION

For the foregoing reasons, the district court correctly granted Defendants' motion to compel and ordered arbitration of Plaintiffs' claims on an individual basis.

**AFFIRMED.**